IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LORENZO ANTHONY WILSON** | * | |
| Petitioner | * | |
| v. | * | Crim. No.: PJM 03-0457 |
| | * | Civ. No.: PJM 12-1136 |
| **UNITED STATES OF AMERICA** | * | |
| Respondent | * | |

## MEMORANDUM OPINION

Lorenzo Anthony Wilson, *pro se*, has filed a Motion to Vacate Conviction [Paper No. 402], a Petition for Leave of Court to Supplement Pleadings [Paper No. 438], and a pleading styled "Supplement [sic] Motion to be Filed Along with 2255 Motion" [Paper No. 483, filed under seal]. Having considered the Motions and the Government's Opposition, the Court **GRANTS** the Petition for Leave of Court to Supplement Pleadings [Paper No. 438],[1] but **DENIES** the Supplement Motion to be Filed Along with 2255 Motion [Paper No 483, filed under seal] and **DENIES** the Motion to Vacate Conviction [Paper No. 402].

I.

A federal grand jury indicted Wilson and two others on five counts: one for kidnapping, aiding and abetting; one for conspiracy to kidnap, aiding and abetting; and three for use of a handgun during a crime of violence, aiding and abetting. A petit jury found Wilson guilty of conspiracy to kidnap, aiding and abetting, but acquitted him of the other counts. The Court subsequently sentenced him to life imprisonment, and 5 years of supervised release.

Wilson filed a timely appeal to the United States Court of Appeals, which affirmed his conviction. The Supreme Court denied Wilson's petition for a *writ of certiorari*, whereupon

---

[1] The Court **GRANTS** the Motion for Leave to Supplement (Paper No. 438) because it contains additional information that relates directly to the claims in the original Motion to Vacate Conviction. His request for Appointment of Counsel, as discussed, infra, will be **DENIED.**

1

Wilson filed the instant Motion to Vacate, followed by two motions for leave to supplement. The first proposed supplement sought consideration of Wilson's recently obtained military records. The second made new arguments, which Wilson asked to have considered as part of his § 2255 Motion.

II.

As an initial matter, in his Supplement Motion to be Filed Along with 2255 Motion (Paper No. 483, filed under seal), and in a letter he sent to the Court that is also filed under seal, Wilson asks that a Public Defender be appointed to assist him with his § 2255 Motion. There is no Sixth Amendment right to counsel to pursue a petition for collateral relief. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Rule 8(c) of the Rules Governing § 2255 Proceedings for the United States District Courts provides that a court must appoint counsel only "[i]f an evidentiary hearing is required." A district court has discretion to provide counsel for an indigent inmate pursuing a petition for habeas corpus if "the court determines that the interests of justice so require." 18 U.S.C. § 3006A (a)(2)(B). No evidentiary hearing is necessary, and the interests of justice do not require appointment of counsel. The Court therefore declines to appoint counsel for Wilson.

III.

In his Motion to Vacate Conviction, Wilson makes three allegations of ineffective assistance of trial counsel: (1) counsel failed to locate potential exculpatory witnesses Angela Neal and Eugene Scott, even after Wilson told counsel they could be alibi witnesses; (2) counsel failed to introduce exculpatory evidence in the form of Wilson's military records, which would have shown his weight at the time of the offense to have been different from that of the individual described by one of the eyewitnesses; and (3) counsel failed to introduce evidence to

2

impeach Charles Whitley, one of the Government's witnesses, by purportedly showing that Whitley had previously made an inconsistent statement to police. Wilson further submits that appellate counsel provided ineffective assistance by not raising the claim that the sentencing court failed to make requisite "particularized findings" concerning jointly undertaken criminal activity.

In response, the Government argues that trial counsel was not ineffective (1) for failing to interview the witnesses in question because neither witness was available; (2) for failing to introduce the evidence of Wilson's weight because counsel was able to emphasize any weight disparity by cross-examining the eyewitness; or (3) for failing to introduce Whitley's previous inconsistent statement to police because Wilson's counsel impeached Whitley in several other ways, such as by mentioning his plea deal with the Government. Further, appellate counsel was not ineffective, says the Government, for failing to raise the Sentencing Guideline issue on appeal because the claim in fact lacked merit and counsel was not required to raise every issue on appeal. In sum, the Government argues that Wilson has failed to meet the *Strickland* ineffective assistance of counsel standard under *Strickland v. Washington*, 466 U.S. 668 (1984).

The Court agrees with the Government.

IV.

To prove ineffective assistance of counsel, a petitioner must first show that his attorney's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687. Substantial deference is given to counsel's judgment. This analysis is context-dependent, as seen from counsel's perspective at the time. *Wiggins v. Smith*, 539 U.S. 510, 511 (2003). Second, counsel's action, even if arguably omissive, must have prejudiced the defendant, meaning that a reasonable probability existed that, but for counsel's conduct, the result of the trial would have

been different. *Strickland*, 466 U.S. at 689. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* at 693.

Wilson's claims will be addressed in turn.

A.

As to his claim that trial counsel failed to locate alibi witnesses, it is not entirely clear whether Wilson, in fact, actually provided the names of the two witnesses to counsel. In any case, even if he did, the Supreme Court has held that there is no need to address the performance component of *Strickland* if there has been no resulting prejudice. *Smith v. Robbins*, 528 U.S. 259, 285 (2009). In the present case, even if counsel had contacted and called both witnesses, there is no reasonable probability that the outcome would have been different.

Angela Neal submitted an affidavit along with Wilson's Motion to Vacate, stating that he was with her at the estimated time of the kidnapping, and that she witnessed a car pull up to him, saw him use one of the passengers' cell phone, then saw him drive away with them. Wilson claims that Neal's testimony would have provided an alibi for the time of the kidnapping. This, however, is ultimately irrelevant because Wilson was not convicted of kidnapping, only conspiracy to kidnap. Furthermore, Neal's recollection of the phone calls Wilson made in her presence fits exactly with the phone records and testimony of Krystal Phauls, Wilson's girlfriend and one of the witnesses at trial, who stated that Wilson called her (Phauls) and asked her to pick him up at a place not far from the site of the murder. Neal's statement does not, in any case, provide an alibi for the time of the murder, even if Wilson had been found guilty of kidnapping, which he was not.

Wilson alleges that the car with the perpetrators of the crime rolled up to Eugene Scott at some point on the night of the kidnapping and attempted to get his attention. He then argues that

4

Scott would have testified that Wilson was not in the car in question and, therefore, did not take part in the kidnapping and murder. However, again apart from the fact that Wilson was not found guilty of kidnapping (only the conspiracy to kidnap), at the trial of Wilson's co-defendants, Scott testified that he could only state with certainty that he did not see who was in the car that approached him that evening, not that Wilson was definitely not in the car. Since no prejudice resulted from the failure to communicate with these two witnesses, hence, there was no ineffective assistance of counsel.

B.

Counsel's failure to introduce Wilson's military records does not demonstrate ineffective assistance. Wilson suggests that his military records would have shown that he was 100 pounds heavier at the time of the kidnapping and murder than he was at the time of trial, and that eyewitness descriptions of the driver of the car did not match his weight profile. While it may be that the admission of the military records would have further informed the jury as to Wilson's contention that he was not the driver of the car during the kidnapping, defense counsel was fully able to make that argument by pointing out the discrepancies in witness Antoine Forrest's testimony, as well as Forrest's inability to identify Wilson as the driver of the car. Counsel does not perform below a professional standard by electing to pursue one trial strategy instead of another. Furthermore, Wilson suffered no prejudice by reason of this omission. The issue of Wilson's weight was relevant only to the question of actual kidnapping. Since he was not convicted of the kidnapping, the jury was still able to conclude that he had participated in the event as a co-conspirator.

## C.

Wilson next contends that trial counsel failed to properly impeach Charles Whitley, one of the Government's witnesses. Whitley had previously made two inconsistent statements to the police about what he had heard regarding Wilson's involvement in the kidnapping and murder. Wilson asserts that his counsel failed to effectively impeach Whitley. It is true, as Wilson contends, that the reasonableness of investigating impeachment evidence depends on the importance of the witness to the prosecution's case. *Tucker v. Ozmint*, 350 F.3d 433, 444 (4th Cir. 2003). However, *Tucker* also makes clear that counsel is not required to investigate every conceivable line of impeachment evidence, even if it is brought to his attention by the defendant. *Id.* at 440. Counsel is entitled to substantial deference when deciding what methods of impeachment to use as part of his trial strategy. *Id.* Therefore, it was not unreasonable for counsel in the present case to rely on arguably stronger impeachment techniques, such as probing Whitley's motive to lie because of his plea deal with the Government, his violent character, and his overall history of unreliability. In addition, it is highly unlikely that the single line of impeachment Wilson refers to, especially since it could easily have been explained away by the witness as a memory lapse, would have any greater effect on diminishing Whitley's credibility than the approaches counsel in fact employed.

Still, Wilson suggests that the Court relied on Whitley's statements during sentencing, which Wilson apparently takes as irrefutable evident that Whitley was not sufficiently impeached at trial. This is sheer speculation. Despite Whitley's on-again off-again statements, the Court, having observed Whitley at trial, was nonetheless entitled to credit Whitley's testimony on its own. When determining prejudice, the court reviews the totality of the circumstances from counsel's perspective *as of the time* of trial. *Wiggins*, 539 U.S. at 511. The totality of the

evidence, including the Court's reliance on Phauls' testimony as corroborative of Whitley's, as well as the further impeachment evidence presented by counsel, demonstrates no prejudice to Wilson.

D.

Finally, Wilson argues that appellate counsel did not raise the claim that the Court failed to make the "particularized findings" required by *United States v. Bolden* with respect to the extent of Wilson's participation in the conspiracy. 325 F.3d 471, 499 (4th Cir. 2002). This argument is meritless. Counsel does not have a duty to raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *Smith*, 528 U.S. at 288. In addition, the sentencing court may rely on a Pre-Sentence Report as the basis for the requisite finding. *Bolden*, 325 F.3d at 497.

On appeal, the sentencing court's factual findings are reviewed for "clear error." *Id*. at 495. Again, Whitley's testimony was corroborated by that of Phauls, who testified that Wilson himself told her about his participation in the kidnapping and murder. The Court, at sentencing, clearly stated that it found Wilson was involved "throughout the transaction" and that the Court was in fact able to reach its conclusion "beyond a reasonable doubt." Sentencing Tr., Joint App'x 877. Persisting, Wilson claims that the Court's statements in and of themselves are not sufficient and that the Court must cite to specific evidence to demonstrate that he understood, could foresee, and was culpable for the actions of the conspiracy. Assuming this is a correct statement of the law, the Court, again, had before it the testimony of both Phauls (who said Wilson admitted his involvement in planning the conspiracy) and Whitley (who also put Wilson into the transaction). It was not, therefore, clear error for the Court to find Wilson was sufficiently

involved in the conspiracy to warrant an increase in the offense level, and so counsel's failure to raise the issue on appeal did not result in prejudice to Wilson.

V.

In his Supplement Motion to be Filed with his 2255 Motion, Wilson asks to "supplement two arguments in addition to the motion already filed." Wilson first cites to *United States v. Alleyne*, 133 S. Ct. 2151 (2013), a recently decided Supreme Court case which overturned *Harris v. United States,* 536 U.S. 545 (2002), to "oppose a sentence that was in conflict with the jury trial verdict." Supp. Mot. at 1. He argues that there was a "[Sixth] Amendment violation of due process" at his sentencing when the Court relied on *Harris* "to find by [a pre]ponderance [of the evidence that] the defendant was guilty, despite the jury finding defendant not guilty of kidnapping (resulting in death)." Supp. Mot. at 2. Wilson also cites to *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), another recently decided Supreme Court case, to argue that trial counsel "failed to properly advise, represent and protect [his] rights to a fair trial under [Sixth] Amendment due process." Supp. Mot. at 2. Within his second argument, Wilson alleges two new instances of supposed ineffective assistance of counsel: (a) trial counsel was ineffective by advising him against seeking a plea deal and leaving him under the false impression that he would only receive ten years if convicted of conspiracy to kidnap; and (b) trial counsel improperly relied on Whitley, a Government witness, to help prepare his trial defense, whereas Whitley was actually a Government informant, a fact which Wilson made clear to counsel. Wilson also argues that trial counsel was, in some way, representing Whitley in his negotiations with the Government, which created a conflict of interest. Both of these new claims are procedurally barred.

A.

In the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Congress established a one-year limitations period for motions for collateral relief under §2255. *See* 28 U.S.C.

§2244(d)(1). The one-year period of limitation shall run, in pertinent part, from the latest of (1) the date on which the judgment of conviction becomes final; or (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. 28 U.S.C. § 2255(f).

Amendments (or even supplemental pleadings) in habeas cases are not permitted outside of the statute of limitations unless the amendment or supplement "relates back" to the original pleading, which means that it "arose out of the conduct, transaction or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15; *Mayle v. Felix*, 545 U.S. 644, 659 (2005). An amended habeas petition "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650.

Wilson's judgment became final on October 17, 2011, when the Supreme Court denied his *writ of certiorari*. Although he filed his original Motion to Vacate within the one-year period, his supplement containing the new claims was filed past the October 27, 2012 deadline. His Supplement Motion would therefore be procedurally barred unless it "relates back" to the original, timely pleading, or, in the alternative, to the extent that his new claims are based on a new rule of constitutional law made retroactive on collateral review. Wilson's Supplement Motion does neither.

B.

Wilson's first argument raised in his Supplement Motion, a late conceived claim based on the recent *Alleyne* decision, is simply unavailing. *Alleyne* overturned *Harris v. United States*, 536 U.S. 545 (2002) holding that "any fact that increases the mandatory minimum is an 'element' [of

9

a crime] that must be submitted to the jury." *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013). Apparently Wilson claims that his sentence was increased on the basis of some fact that, according to *Alleyne*, should have been submitted to the jury.

Although Wilson's new argument refers to the judicial fact-finding at sentencing also raised in Wilson's last argument in the original Motion to Vacate, the claim does not relate back because it is different in both time and type. Wilson's new argument, based on *Alleyne*, directly challenges the constitutionality of the Court's judicial fact-finding at sentencing as applied to the advisory guidelines. Wilson's argument in his original Motion argues ineffective assistance of appellate counsel for failure to raise the issue of particularized findings at sentencing on appeal (before *Alleyne* was decided).

To the extent Wilson relies on *Alleyne* to re-trigger the statute of limitations as a new right recognized by the Supreme Court and made retroactively applicable to cases on collateral review, Wilson's attempt also fails. *Alleyne* has not been applied retroactively to cases on collateral review. *See United States v. Stewart*, No. 13-6775, 2013 WL 5397401, at *1, n. * (4th Cir. Sept. 27, 2013); *Christian v. United States*, Civ. No. CCB-13-2868, Cr. No. CCB-03-0351, 2013 WL 5566507 at *1 (D. Md. Oct. 8, 2013); *see also Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013). That alone is sufficient to bar his *Alleyne* claim, raised more than a year after his conviction was final.

Assuming arguendo that *Alleyne* is retroactive on collateral review, the holding in *Alleyne* is nonetheless inapplicable to Wilson's case. Wilson appears to argue that that the Court relied on *Harris* at sentencing to find by a preponderance of the evidence that the conspiracy to kidnap resulted in a death. This judicial fact-finding resulted in an enhanced sentence in violation of Wilson's Sixth Amendment right to a jury trial. Wilson presumably argues that the fact of the

murder had to be submitted to a jury and found beyond a reasonable doubt, but his reliance on *Alleyne* for this proposition is misplaced.

The *Alleyne* Court made clear that its holding did not disturb judicial fact-finding at sentencing for facts that do not impact the statutory punishment. *Alleyne*, 133 S. Ct. at 2161 n. 1, 2163; *see also United States v. Mason*, 12-4934, 2013 WL 6172545 (4th Cir. Nov. 26, 2013). Although judicially determined facts are no longer relevant after *Alleyne* to deciding the applicable mandatory minimum, the factual findings needed to calculate a defendant's Advisory Guidelines range are still within the district court's province. *United States v. Holder*, 13-4269, 2014 WL 57798, at *1 (4th Cir. Jan. 8, 2014) (citing *United States v. Claybrooks,* 729 F.3d 699, 708 (7th Cir.2013); *United States v. Booker*, 543 U.S. 220, 233 (2005) ("[W]hen a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant").

The issue at Wilson's sentencing had nothing to do with mandatory terms imposed by the statute. Instead, the issue debated by counsel was how to calculate the advisory guideline range.

The jury convicted Wilson of conspiracy to kidnap Eric Hayes under 18 U.SC. §1201(c). At sentencing, the Court found that the kidnapping resulted in a death and, pursuant to the Guidelines, cross-referenced Wilson's base offense level of 32 to reflect that circumstance, raising his total offense level to 43. *See* U.S. Sentencing Guidelines Manual §2A4.1(a) and §2A1.1 (2005). At that offense level, with a Criminal History Category of I, the guideline range suggested a term of life imprisonment. The Court therefore imposed a sentence within the advisory guidelines. The Court did not make any findings at sentencing that changed the mandatory terms in the statute that was the basis for Wilson's conviction. Rather, the Court made factual findings to calculate Wilson's advisory guideline range. Because *Alleyne*'s holding does

11

not impact a district court's fact-finding to calculate the advisory guideline range, it would not apply to Wilson's sentence.[2]

### C.

Wilson's second claim is also procedurally barred. Without question, Wilson's second claim raised in his Supplement Motion states new grounds for relief not mentioned in his original Motion to Vacate Conviction. His second claim, raising ineffective assistance of counsel, introduces entirely new facts about the relationship between his counsel and Charles Whitley, who he claims was working at relevant times as an informant for the Government. He also calls attention to his counsel's purported failure to pursue a plea deal and properly advise him about the merits of a plea agreement. These arguments are raised out of time and will not be considered.

Even though Wilson asserts ineffective assistance of counsel in both the original pleading and in the new one, the fact that he alleges new bases and facts for the claims means that the new pleading does not relate back to the old one. *Pittman*, 209 F.3d at 317 (construing *United States v. Craycraft*, 167 F.3d 451, 456-57 (8th Cir. 1999) (amendment did not relate back where original pleading raised ineffective assistance claim and amendment alleged yet another claim of ineffective assistance not mentioned in the original pleading)); *Gardner v. United States*, Civ. No. PRM 09-1508, Cr. No. PJM 06-0422, 2011 WL 5980580, at *6 (D. Md. Nov. 28, 2011) (same).

---

[2] Wilson's suggestion that the Court relied on *Harris* during sentencing is also misplaced. During the sentencing hearing, the only reference to *Harris* occurred when the Government read from *United States v. Gray*, 362 F. Supp. 2d 714, 722 (S.D.W. Va. 2005) *aff'd,* 491 F.3d 138 (4th Cir. 2007), a case provided by Wilson's counsel prior to the hearing that cited to *Harris v. United States,* 536 U.S. 545, 558 (2002). Nothing in the transcript, however, indicates that the Court relied on *Harris* to make a judicial finding of fact to enhance the mandatory minimum in contravention of *Alleyne*'s holding.

To the extent that Wilson relies on *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) to trigger a new one year filing period for his additional ineffective assistance of counsel claims, his attempt fails. Numerous courts, including this Court, have held that *Lafler* did not announce a new rule of constitutional law. *See Keller v. United States*, CIV.A. CCB-13-857, 2013 WL 2420435, at *2 (D. Md. May 30, 2013) (*Lafler* and *Frye* did not announce a new rule of constitutional law); *Linton v. United States*, CIV.A. JKB-13-323, 2013 WL 599563, at *1 (D. Md. Feb. 14, 2013) *appeal dismissed*, 536 F. App'x 310 (4th Cir. 2013) (same); *Gallagher v. United States*, 711 F.3d 315, 315-16 (2d Cir. 2013) (same); *Hare v. United States,* 688 F.3d 878, 879 (7th Cir. 2012) (holding that *Lafler* applied an "established rule"); *In re Perez,* 682 F.3d 930, 932 (11th Cir. 2012) (holding that *Lafler* was merely an application of the Sixth Amendment right to counsel).

Even if *Lafler* were to apply retroactively, Wilson has made no showing that he suffered prejudice from his counsel's failure to advise Wilson to accept a plea deal. Wilson's own Supplement Motion states that counsel advised him against a plea deal because the "Government would more than likely only offer a plea to life in prison." Wilson has failed to show that accepting a plea in this case would have resulted in a lower sentence than what he received: life imprisonment. Wilson's second argument in his Supplement Motion simply bears no relation to *Lafler*'s holding.

In sum, because the claims in Wilson's Supplement Motion do not relate back, nor do they rely on any new rule of constitutional law, they are barred by the statute of limitations and are not properly before the Court. *See Pittman*, 209 F.3d at 318; *United States v. Winestock*, 340 F.3d 200, 204 (4th Cir. 2003); *United States v. Thomas*, 221 F.3d 430, 436 (3rd Cir. 2000).

VI.

A certificate of appealability will not issue absent a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong, and that any dispositive procedural ruling by the district court is debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). The Court finds that Wilson has not made the requisite showing in the instant case.

VII.

For the foregoing reasons, Petitioner Wilson's Motion for Leave to Supplement Pleadings [Paper No. 438] is **GRANTED,** the Supplement Motion to be Filed Along with 2255 Motion [Paper No. 483] is **DENIED** and the Motion to Vacate Conviction [Paper No. 402] is **DENIED.**

A separate order will **ISSUE.**

/s/

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

March 27, 2014